UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Chambers of
**Joseph A. Dickson**
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973-645-2580)

LETTER REPORT AND RECOMMENDATION

June 11, 2014

*All counsel of record via ECF*

Re:   Braun v. Schwartz, et al.
      Civil Action No.: 12-6224 (ES) (JAD)

Counsel:

This will address Defendant Dale Weingarten's motion for sanctions against Plaintiff Jeff Braun, his counsel, Robert Hille, Esq., and the law firm of McElroy, Deutsch, Mulvaney & Carpenter. (ECF No. 41). The Hon. Esther Salas, U.S.D.J. referred Defendant's motion to this Court for resolution and this Court conducted oral argument on May 22, 2014. For the reasons set forth below, this Court recommends that Defendant's motion for sanctions be **DENIED**.[1]

**BACKGROUND**

The Hon. Esther Salas, U.S.D.J. provided a clear and comprehensive summary of the relevant factual background for this matter in Her Honor's September 30, 2013 Opinion, (ECF No. 39 at 2-6), and the Court incorporates that discussion herein by reference. The Court will, however, specifically note certain factual and procedural information that is vital to the resolution of Defendant's motion for sanctions.

---

[1] The Court has prepared a report and recommendation rather than an opinion/order as Defendant Weingarten has made an application for sanctions pursuant to 28 U.S.C. § 1927. Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc., 110 F. App'x 283, 285 (3d Cir. 2004). Additionally, 15 U.S.C. § 78u-4(c) requires that the District Court make certain findings in connection with its resolution of Defendant's motion to dismiss.

This action arises in connection with Plaintiff Jeff Braun's business relationship with Defendants Schwartz and Weingarten. Defendants allegedly solicited Plaintiff to invest in a sports park located in Fort Ann, New York. (Compl., ECF No. 1, ¶ 32). Under the proposed arrangement, Plaintiff would lease the necessary real estate while Defendant Weingarten (whom Defendants held out as an experienced sports professional with substantial, integral contacts in the sports community), would control the park's day-to-day operations. (Id., ¶¶ 32-41). Defendants allegedly represented that Weingarten's involvement would "ensure the future success of the [park]", (id., ¶ 34), that the facility was "a great investment opportunity that would allow [Plaintiff] to sit back and collect the profits", (id., ¶ 42), as well as a "'turnkey profit center' that required limited start up [sic] money because the existing business was already in place." (Id., ¶ 43). Plaintiff alleged that Defendants' representations regarding the earning potential and profitability of the sports park venture were false and misleading. (Id., ¶¶ 44-49). Plaintiff also alleged that Defendants misrepresented Weingarten's ability to successfully run the park. (Id., ¶¶ 49-57). Plaintiff filed a Complaint alleging two causes of action for violations of the Securities Exchange Act (the "Act"), as well as eighteen causes of action under New Jersey statutory and common law. (Id. at ¶¶ 183-338).

Both Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that the transaction at issue did not involve "securities" at all and therefore fell outside the ambit of the Act. Plaintiff contended that the parties' transaction constituted an "investment contract", and therefore a type of "security" under the Act. 15 U.S.C. § 78c(a)(10). Judge Salas acknowledged that, while Congress never defined the term "investment contract", the Supreme Court provided guidance on the issue in SEC v. W.J. Howey Co., 328 U.S. 293 (1946). (Opinion, ECF No. 39, at 11). In Howey, the Court

articulated three factors to consider when determining whether a transaction qualifies as an investment contract: "(1) whether plaintiff has invested money; (2) whether the parties are engaged in a common enterprise; and (3) whether the profits of the enterprise were to come solely from the efforts of others. Howey, 328 U.S. at 298-99. Judge Salas noted that only the third factor (i.e., whether profits came solely from the efforts of others), was genuinely in dispute in the context of Defendant's motion. (ECF No. 39 at 11).

In addressing that factor, Judge Salas found that Plaintiff was actively involved in both relevant entities (Brown and Green Realty, LLC ("B&G Realty"), which owned the real estate and assets of the sports park at issue, and JD Sports Park, LLC (JD Sports Park), which operated the park), as he was the controlling and managing member of both, owned 99% of B&G Realty and retained sole authority to take certain actions on that entity's behalf. (Id. at 13-14). Judge Salas also found that, although Plaintiff left the day-to-day affairs of B&G Realty to Weingarten, "Plaintiff held significant rights and powers as a controlling member", (id. at 14), regardless of whether he actually exercised them. With regard to JD Sports Park, Judge Salas found that Plaintiff never made any initial investment in that company (rejecting the argument that Plaintiff's various loans to the entity – made <u>after</u> he acquired an interest in the sports park venture - might constitute an investment). (Id. at 14-15). Therefore, it could not qualify as an investment contract under Howey. (Id.). Her Honor also rejected Plaintiff's arguments that, because Weingarten was in charge of JD Sports Park's day-to-day activities, Plaintiff was simply a passive investor in that entity. Instead, Judge Salas found that, because Plaintiff was the company's controlling member, he retained significant legal rights. (Id. at 15-16).

In short, Judge Salas determined that the parties' business transaction did not constitute an "investment contract" under the Act. As Plaintiff did not articulate any other legitimate

arguments to as to how that transaction might otherwise constitute a "security", the Court determined that the statute did not apply. (Id. at 16). The Court therefore dismissed Plaintiff's claims under the Act (i.e., Counts One and Two), and declined to exercise jurisdiction over Plaintiff's remaining state law claims. (Id.).

## THE PARTIES' ARGUMENTS

Defendant Weingarten requests sanctions against Plaintiff and Plaintiff's counsel pursuant to Rule 11 and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C § 78u-4(c) (requiring an award of reasonable attorneys' fees if the Court finds that a party has substantially failed to comply with any portion of Rule 11(b)), as well as 28 U.S.C. § 1927 (permitting fee awards against attorneys who "multiplies the proceedings in any case unreasonably and vexatiously) and the Court's inherent power to sanction counsel. (Def. Br., ECF No. 41-1 at 3-9).

Weingarten contends that Plaintiff filed a factually and legally frivolous complaint, and that sanctions are therefore mandatory under Rule 11 and the PSLRA. (Id. at 26-28). On the legal frivolity point, Defendant argues that if Plaintiff and his counsel had conducted a reasonable investigation of the relevant facts and law before filing suit, they would have discovered that the transaction at issue could not reasonably be cast as an "investment contract" under precedent from the United States Court of Appeals for the Third Circuit (i.e., the transaction fell outside the ambit of the Act). (Id. at 14-18). With regard to his factual frivolity argument, Defendant contends that a single e-mail, not appended to or referenced in the Complaint, establishes that Plaintiff did not, in fact, rely on Defendants' allegedly fraudulent misrepresentations when deciding to acquire an interest in the sports park venture. (Id. at 23-24). Defendant similarly argues that certain other evidence developed in a previous court action

contradicts Plaintiff's allegations that he loaned $343,000 to JD Sports Park in 2011 and that the park lost over $300,000. (Id. at 24-25). Defendant also challenges Plaintiff's interpretation of an alleged business plan document. (Id. at 25-26).

In addition to his request for sanctions under Rule 11 and the PSLRA, Weingarten requests that the Court sanction Plaintiff's counsel under both 28 U.S.C. § 1927 and its inherent power to regulate attorney conduct. (Id. at 9). Relying on the examples of alleged frivolity described above, Weingarten argues that "[i]t is implausible to suggest that a competent attorney could have formed a reasonable belief that the Complaint was well-grounded in fact or 'warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'" (Id. at 27).

Finally, Weingarten argues that Plaintiff filed this action "in a blatant attempt to derail Weingarten's existing lawsuit, which had been pending for seven months" in New York state court. (Id. at 22). It appears that, in making this argument, Weingarten is suggesting that Plaintiff commenced this action for an "improper purpose," in violation of Rule 11(b)(1).

In response, Plaintiff argues that his counsel thoroughly investigated the operative facts and researched the governing law prior to filing suit. Indeed, Plaintiff's counsel submitted a detailed, sworn affidavit attesting to those efforts. (See Aff. of Robert B Hille, Esq., ECF No. 46-4, at 3-10). Only after conducting that investigation and research did counsel decide that they could make a good faith argument that the transaction at issue could be considered an "investment contract" for the purposes of the Act (or, alternatively, that Plaintiff could make a nonfrivolous argument for expanding/modifying the existing law to include the parties' relationship as a type of investment contract). (Pl. Br., ECF No. 46 at 4-9, 21-29). In making

this argument, Plaintiff references opinions from various Courts of Appeal interpreting and applying the definition of an investment contract under the Act.

For instance, Plaintiff cites the United States Court of Appeals for the Fourth Circuit's opinion in Robinson v. Glynn, 349 F.3d 166, 170 (4th Cir. 2003), for the proposition that the question of whether a transaction constitutes an "investment contract" under the Act focuses on the "economic reality" of the relationship, rather than its form (i.e., whether, under the specific circumstances, the investor is "left unable to exercise meaningful control over the investment"). (Pl. Br., ECF No. 46 at 22-23) (citing Robinson, 349 F.3d at 170). Plaintiff further notes the Fourth Circuit's indication that the Supreme Court's post-Howey opinions seemed to indicate that the Supreme Court had "relax[ed] the requirements that an investor rely only on others' efforts, by omitting the word 'solely' from its restatements of the Howey test." (Id. at 22) (citing Robinson, 349 F.3d at 170).

Plaintiff also cites the United States Court of Appeals for the Eleventh Circuit's decision in Albanese v. Florida Nat'l Bank of Orlando, 823 F.2d 408 (11th Cir. 1987), for the principle that, even if plaintiff investors retain control of an entity, their investment may still constitute an "investment contract" under the Act if their control over the entity is "illusory" because the "'plaintiffs had no realistic alternative to allowing [defendant] to manage their investment.'" (Pl. Br., ECF No. 46 at 23) (quoting Albanese, 823 F.2d at 412). Additionally, Plaintiff cites to the United States Court of Appeals for the Fifth Circuit's opinion in Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981) for the idea that a business partnership might constitute an investment contract where a partner is "so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person." (Pl. Br., ECF No. 46 at 23) (citing Williamson, 645 F.2d at 422-23). Similarly, Plaintiff refers to the United States District

6

Court for the Northern District of Georgia's decision in S.E.C. v. Phoenix Telecom, LLC, 239 F. Supp. 2d 1292, 1298 (N.D. Ga. 2000), where the court found that "because investors expected profits to be derived from the 'entrepreneurial or managerial efforts' of the Defendants, the third element of an investment contract [i.e., reliance on the efforts of others] is satisfied." (Pl. Br., ECF No. 46 at 24) (quoting Phoenix Telecom, 239 F. Supp. 2d at 1298).

Finally, with regard to Weingarten's request for sanctions under 28 U.S.C. § 1927 and the Court's inherent power to sanction attorneys, Plaintiff argues that such sanctions would be inappropriate, as either type would require a finding that Plaintiff's counsel acted in bad faith. (Id. at 21). Plaintiff contends that, because his counsel's arguments were made in good faith and based on a proper factual and legal investigation, and because Plaintiff's decision to commence this action was not driven by any improper purpose,[2] such sanctions are not warranted. (Id. at 30-31).

## LEGAL DISCUSSION

Defendant Weingarten seeks sanctions under 15 U.S.C. § 78u-4(c), well as Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority to sanction counsel. (Def. Br., ECF No. 41-1 at 3-9). 15 U.S.C. § 78u-4(c) governs sanctions for abusive practices in the context of private securities litigation, and provides, in pertinent part:

> (1) Mandatory review by court. In any private action arising under this title [15 USCS §§ 78a et seq.], upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

---

[2] With regard to Defendant's argument that Plaintiff commenced this action solely for the purpose of disrupting the already pending New York state court matter, Plaintiff contends that he and his counsel "were desirous of litigating all claims among the parties [including Plaintiff's perceived claim under the Act] at the same time and in a convenient venue." (Id. at 30).

7

> (2) Mandatory sanctions. If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

The statute also mandates a "presumption" that an award of attorneys' fees and costs is the appropriate sanction for a violation. 15 U.S.C. § 78u-4(c)(3).

As the necessity of sanctions under 15 U.S.C. § 78u-4(c) depends entirely on the Court's determination of whether a party has violated Federal Rule of Civil Procedure 11(b), the Court will determine the propriety of both PSLRA sanctions and Rule 11-based sanctions simultaneously. Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

As noted, 15 U.S.C. § 78u-4(c)(1) requires the Court to make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." The Court will therefore address each subpart of Rule 11(b) in turn.

### a.     Rule 11(b)(1)

Rule 11(b)(1) requires that a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Here, Defendant Weingarten contends that he had previously commenced a state court action against Plaintiff in New York and that Plaintiff later filed this matter as an attempt to disrupt that first-filed case. (Pl. Br., ECF No. 41-1, at 1). The record reflects, however, that Plaintiff and his counsel sought to litigate what they believed to be a valid federal claim in federal court.[3] That is not an "improper purpose" within the meaning of Rule 11.[4]  Moreover, nothing in the record suggests that Defendants or their counsel submitted anything to the Court with an improper purpose. The Court therefore finds that no party or counsel involved in this matter has violated Rule 11(b)(1).

### b.     Rule 11(b)(2)

Rule 11(b)(2) requires that a party's legal contentions be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." As noted above, Defendant Weingarten claims that, in light of the relevant circumstances and existing precedent from the United States Court of Appeals for the Third Circuit, Plaintiff's attempt to characterize the parties' transaction as an "investment contract" for the purposes of the Act was sanctionably frivolous. (Def. Br., ECF No. 41-1, at 4-

---

[3] The Court will address the reasonability of that belief in its discussion of the parties' compliance with Rule 11(b)(2) below.
[4] The courts are quite frequently asked to resolve first-filed and venue issues. When the venue is proper, as here, and the claims are distinct, as here, there is no improper purpose.

18). The record on this motion, however, establishes that Plaintiff's counsel conducted a factual investigation, researched Plaintiff's potential causes of action[5] and, after interpreting case law from various Courts of Appeal and applying it to the relevant facts,[6] determined that Plaintiff could make a good faith argument that the business transaction at issue constituted an "investment contract" for the purposes of the Act. While Judge Salas ultimately disagreed and found that Plaintiff's legal authority over the JD Sports Park and B&G Realty was sufficient to defeat Plaintiff's "investment contract" claim (regardless of whether Plaintiff exercised that authority or otherwise took an active role in running the companies), that does not render Plaintiff's claim frivolous under Rule 11(b)(2). See Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987) ("Rule 11 sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required."); see also Dura Systems, Inc. v. Rothbury Invest., Ltd., 886 F.2d 551, 556 (3d Cir. 1989) ("Although the Rule imposes a duty of reasonable inquiry as to both facts and law, it is 'not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.' The standard is one of 'reasonableness under the circumstances.'") (internal citations omitted); Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) ("This Court and others have interpreted [Rule 11] to prescribe sanctions, including fees, only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous.") (internal citations omitted). This Court finds

---

[5] As noted above, Plaintiff's counsel submitted a sworn affidavit describing those investigation and research efforts. (See ECF No. 46-4 at 3-10). While Defendant criticizes the ultimate result of those efforts, Defendant does not rebut counsel's representations of his factual and legal investigations. Based on Plaintiff's counsel's unrebutted recitation of recitation, the Court finds that Plaintiff's counsel's factual and legal investigation of Plaintiff's potential claims was reasonable under the circumstances.

[6] For instance, Plaintiff alleges that Defendants represented the sports park as a "turnkey profit center", and that Weingarten would be solely responsible for managing the business' day to day operations, given his familiarity with the industry, in general, and the specific sports park, in particular. (Compl., ECF No. 1, ¶¶ 32-40, 43).

10

that, at worst, Plaintiff was arguing, unsuccessfully, for an expansion/modification of the existing law (i.e. – for the characterization of a transaction as an "investment contract" where a limited liability company's member's only true function is to provide a capital investment, and depends on another, experienced member to manage the business). Such advocacy does not run afoul of Rule 11. See Gairardo, 835 F.2d at 483 ("[Rule 11] is not breached if after reasonable legal research and adequate factual investigation, a party and counsel in good faith decide to challenge existing law. Responsible, albeit adventuresome, lawyers must not be sanctioned in these circumstances.") Indeed, if attorneys are unwilling to make creative arguments for changes or exceptions to the law for fear of being sanctioned, the system will become stagnant and legal innovation will cease. Legal rights not contemplated by existing precedent may go unaddressed and attorneys may allow complacency to replace active thought and contemplation as the hallmark of a profession that is fundamental to the protection of our constitutional principles. Based on the foregoing, the Court finds that Plaintiff's legal arguments were reasonable under the circumstances, and that neither Plaintiff nor his counsel has violated Rule 11(b)(2). Additionally, the Court finds that nothing in the record establishes that Defendants or their counsel have taken any action in violation of Rule 11(b)(2).

c. **Rule 11(b)(3)**

Rule 11(b)(3) mandates that a party's factual contentions have evidentiary support. Defendant Weingarten contends that several of the allegations set forth in Plaintiff's Complaint are factually unsupportable. Specifically, Weingarten argues that Plaintiff lacked any legitimate factual basis for his allegation that he relied on Defendant's verbal representations concerning the future profitability of the sports park venture. (Def. Br., ECF No. 41-1, at 23-24). Similarly, Weingarten claims that evidence developed during the New York state court action disproves

Plaintiff's allegations that he loaned $343,000 to JD Sports Park in 2011 and that the park lost over $300,000. (Id. at 24-25). The Court reiterates its determination that Plaintiff's counsel conducted a reasonable factual investigation of Plaintiff's potential claims.

As an initial matter, it appears that no party raised these arguments in connection with Defendants' motions to dismiss and, instead, Defendant Weingarten is raising them, for the first time, in connection with his motion for sanctions. (See generally ECF Nos. 9-2, 10-1, 27, 28). Even if Weingarten had attempted to raise these points before Judge Salas, it would have been inappropriate for him to do so, as both arguments are premised on the content of documents that are neither referenced in nor annexed to the Complaint, and are therefore well beyond the permissible scope of a Rule 12(b)(6) motion. Similarly, Defendant asks the Court to resolve these alleged factual disputes, neither of which were germane to the resolution of Defendants' motions, without the benefit of discovery. Nothing in 15 U.S.C. § 78u-4(c)(1) or associated case law, however, requires the District Court to conduct a trial, at the pleadings stage (or, even more outlandishly, post-dismissal), on every challenged factual allegation contained in a complaint. Yet, this distortion of the fact-finding required under 15 U.S.C. § 78u-4(c)(1) is precisely what Weingarten requests. (See Tr. of May 22, 2014 Hr'g., ECF No. 58, at 8:21-22 ("I think it does require a factual finding, but I think it's a relatively easy factual finding. . ."); 9:25-10:1 ("It is a fact issue, but it's a very easy fact issue for the Court to resolve."). The Court will not engage in a speculative or presumptive fact finding based on such a limited record. The Court merely finds that the limited record generated in this case simply does not establish that Plaintiff's allegations, as described above, lacked evidentiary support.

Similarly, Weingarten challenges "Braun's claim that the so-called 'business plan' guaranteed profit of $600,000", and argues that Braun's allegation "is not supported even by the

document itself." (Def. Br., ECF No. 41-1, at 25). Having reviewed Plaintiff's Complaint in detail, the Court finds that Weingarten has misinterpreted Plaintiff's allegations on this point.

Plaintiff certainly made a number of contentions regarding the content of the "business plan" that Defendants allegedly provided to Plaintiff. For instance, Plaintiff alleges that the plan indicated that the sports park business would be "substantially profitable from the start", (Compl., ECF No. 1, ¶ 22), and would generate "total revenues starting in the one-million dollar range in 2011 and exceeding $2,500,000 by 2014." (Id. ¶ 82). Plaintiff also alleges, however, that he took part in a meeting with Defendants on October 4, 2010, and that he relied on verbal representations that Defendants made during that meeting. (Id. ¶ 29; id. ¶ 95) (alleging that Defendants made separate representations at the October 4, 2010 meeting and in the business plan they submitted to Plaintiff). The Complaint indicates that Defendants allegedly made the representation regarding the "guaranteed profit of $600,000" during the parties' meeting. (Id. ¶¶ 24-47). Plaintiff verified this interpretation of the Complaint in his opposition to Weingarten's motion for sanctions. (See, Pl. Br., ECF No. 46, at 31, n.7). In his reply submission, Weingarten altered his argument, contending that, "even if Weingarten had sworn on a stack of Bibles" that "Braun would realize a $600,000 profit in year one", the content of the November 3, 2010 e-mail, described above, demonstrates that Plaintiff could not have reasonably relied on Defendants' alleged, verbal misrepresentation. (Def. Reply, ECF No. 47 at 2-3). The Court has already addressed the concept of factual disputes in connection with Plaintiff's reliance on Defendants' alleged misstatements. As noted, that issue played no part in Judge Salas's decision to grant Defendants' motion, and the factual dispute regarding Plaintiff's alleged reliance remains unresolved. The Court need not, and will not, spend time resolving a now-meaningless

factual dispute.[7] In short, based on the available record, the Court finds that neither party has violated Rule 11(b)(3) with regard to Plaintiff's claims under the Act.

### d. Rule 11(b)(4)

Rule 11(b)(4) requires that all denials of factual contentions be warranted based on the evidence. This subpart is inapplicable here, as Plaintiff's Complaint was dismissed before any party was required to file a responsive pleading.

### e. Neither Party Has Violated Rule 11(b)

As described in more detail above, the Court finds that neither party has violated any part of Rule 11(b), and that sanctions would therefore be inappropriate under either 15 U.S.C. § 78u-4(c) or Rule 11 itself.[8]

---

[7] Moreover, there is a material dispute between the parties regarding the inferences to be drawn from the allegations and limited evidence of record. This clearly weakens Defendant's claims of sanctionable conduct.

[8] In his opposition to Weingarten's motion for sanctions, Plaintiff argued, in part: "If any sanctions should be imposed, they should be imposed on the basis of the filing of this Sanctions Motion." (Pl. Br., ECF No. 46, at 30). Plaintiff's counsel reiterated this point during oral argument. (Tr. of May 22, 2014 Hr'g, ECF No. 58, at 14:12-18). In response, Weingarten argued that the Court lacks authority to impose sanctions against him pursuant to 15 U.S.C. § 78u-4(c), as Weingarten prevailed in defeating Plaintiff's claims under the Act. (Def. Reply, ECF No. 47, at 12, n.2); (Def. May 28, 2014 Letter, ECF No. 59). Plaintiff responded by arguing that, even if sanctions were not appropriate under 15 U.S.C. § 78u-4(c), the Court could still sanction Weingarten under Rule 11. (Pl. May 28, 2014 Letter, ECF No. 60). Even assuming the Court had the authority to sanction Defendant Weingarten under 15 U.S.C. § 78u-4(c), the Court has already expressly determined that neither party violated any portion of Rule 11(b) in connection with Plaintiff's claims under the Act. Therefore, sanctions are not appropriate under 15 U.S.C. § 78u-4(c). With regard to the Court's authority to sanction Weingarten under Rule 11 for filing the instant motion, the Court notes that Plaintiff has not filed a motion for sanctions on that issue (and nothing in the record indicates that Plaintiff followed the "safe harbor" procedure required under Rule 11(c)(2)), and the Court declines to bring such a motion on its own initiative under Rule 11(c)(3).

### f.  Sanctions Are Not Appropriate Under 28 U.S.C. § 1927 or the Court's Inherent Authority to Sanction Counsel

Defendant Weingarten also requests that the Court impose sanctions under 28 U.S.C. § 1927 and the Court's inherent authority to sanction counsel. 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The United States Court of Appeals for the Third Circuit has found, however, that "before attorneys' fees and costs may be taxed under section 1927, there must be a finding of <u>willful bad faith</u> on the part of the offending attorney." <u>Baker Industries, Inc. v. Cerberus, Ltd.</u>, 764 F.2d 204, 209 (3d Cir. 1985) (emphasis added). The Third Circuit has also acknowledged that "a finding of bad faith is generally required for a court to impose sanctions pursuant to its inherent authority." <u>Tracinda Corp. v. DaimlerChrysler AG</u>, 502 F.3d 212, 242 (3d Cir. 2007).

As discussed at length above, this Court has found that Plaintiff's counsel filed suit only after conducting both a factual investigation and legal research on the definition of an "investment contract" under the Act, that counsel made a nonfrivolous argument for a change in the governing law, and that Plaintiff did not commence this action for any improper purpose. The Court therefore declines to find that Plaintiff's counsel acted in bad faith in this matter. Defendant Weingarten's request for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority should therefore be denied.

**CONCLUSION**

Based on the foregoing, this Court recommends that the District Court adopt the findings set forth above regarding the parties' and their counsel's compliance with Rule 11(b), and that Defendant Weingarten's motion for sanctions, (ECF No. 41), be denied in its entirety.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:   Hon. Esther Salas, U.S.D.J.